UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CONSERVATION CONGRESS,

    Plaintiff,

v.

MERV GEORGE, et al.,[1]

    Defendants.

Case No. 14-cv-01979-TEH

**ORDER RE: MAY 4, 2015 HEARING**

The parties shall come to the May 4, 2015 hearing prepared to address the following questions.

For Plaintiff:

1. How do you distinguish your challenges to the Algoma, Beaverslide, Mudflow and Porcupine projects, such that the Court should resolve this challenge differently?

2. How is it consistent to argue both that Defendants did not consider the White Paper and that they erroneously used some of its analysis and conclusions?

3. How would using a 0.7 mile radius for Northern Spotted Owl analysis, instead of 0.5 miles, change the environmental review process or results, since Defendants formally consulted and concluded that no habitat downgrade or take will occur?

4. Is it your position that Defendants cannot take any action that would increase sediment deposits to waterways, even if they implement best management practices to deal with those deposits?

---

[1] This case was previously styled *Conservation Congress v. Tyrone Kelley, et al.* However, Mr. Kelley has been replaced in his capacity as Forest Supervisor by Mr. Merv L. George, Jr.  Defs.' Cross-Mot. at viii & n.1 (Docket No. 33).  Pursuant to Fed. R. Civ. P. 25(d), the Clerk shall substitute Mr. George for Mr. Kelley as the individually named defendant in this action, and the parties shall use the new caption in all future submissions.

For Defendants:

5. What are the exact definitions of "high-quality" and "low-quality" nesting/roosting habitat used in the Project, and where did they come from?

6. How can Defendants reasonably conclude that thinning "low-quality" nesting habitat to less than half the basal area of the Fish & Wildlife Service definition would not downgrade that habitat?

7. The "guideline" you cite for Defendants' references to a nest protection area of 70 acres appears to be one of the proposed conservation measures used in the Project, rather than any independently developed guideline.  Why did Defendants repeatedly refer to 70 acres of protection, if the Forest Plan and the Project itself actually set aside more than 100 acres of protection?

8. What is the status of the wastewater waiver that the Forest Service stated it would seek after the Record of Decision was signed in April 2014?

9. Is it your position that an agency is not required to consider a reasonable alternative to a project that was proposed after the scoping phase?

10. How is it consistent to argue both that Plaintiff's suggested diameter-cap alternative would have a substantially similar environmental result, and that such an alternative would fail to meet the resources objectives of the Project?

**IT IS SO ORDERED.**

Dated:   04/13/15              _____
                               THELTON E. HENDERSON
                               United States District Judge

2